**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| RUBEN MENA-VALDEZ, *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Civil No.** 11-1255 (FAB) |
| E.M. T-SHIRTS DISTRIBUTORS, INC., *et al.*, | |
| **Defendants.** | |

**OPINION AND ORDER[1]**

BESOSA, District Judge

Plaintiffs Ruben Mena-Valdez ("Mena" or "plaintiff"), Ivette Perez-Maldonado ("Perez"), and their conjugal partnership (collectively, "plaintiffs") bring this action against Mena's former employer, E.M. T-Shirts Distributors, Inc. ("E.M. T-Shirts" or "defendant"), along with E. Mendoza & Co. Inc., Eduardo Mendoza Corporation, and Calcomanias Garneda, Inc., doing business as Supermercado de Camisetas (collectively, "co-defendants"), pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12112(a) and 12112(b)(4) ("ADA"); the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"); and Law No. 80 of May 30, 1976 P.R. Laws Ann. tit. 29 § 185, *et seq.* ("Law 80").

Pending before the Court is defendants' motion for summary judgment. (Docket No. 61.) For the reasons set forth below,

---

[1] Jared Killeen, a second-year student at Brooklyn Law School, assisted in the preparation of this opinion.

defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

## PROCEDURAL HISTORY

On March 3, 2011, plaintiffs filed a complaint against Mena's former employer, E.M. T-Shirts, alleging interference with protected rights and termination of employment without just cause under, *inter alia,* the FMLA, 29 U.S.C. § 2601, *et seq.;* Law 80; and Article 1802 of the Civil Code, P.R. Laws Ann. tit. 31 § 5141 ("Article 1802"). (Docket No. 1.) Defendant filed a motion to dismiss on April 14, 2011, (Docket No. 12), to which plaintiffs filed an opposition on June 30, 2011. (Docket No. 25.)

Plaintiffs filed an amended complaint on June 27, 2011. (Docket No. 21.) Plaintiffs added as co-defendants E. Mendoza & Co. Inc., Eduardo Mendoza Corporation, and Calcomanias Garneda, Inc., under the umbrella of Supermercado de Camisetas. Plaintiffs also added a claim under section 510 of the Employee Retirement Income Security Act, 29 U.S.C. § 1140 ("ERISA"). On July 5, 2011, E.M. T-Shirts filed a motion to dismiss the amended complaint, (Docket No. 30), which was later joined by co-defendants. (Docket No. 35.) Plaintiffs filed an opposition on July 21, 2011, and defendants replied five days later. (Docket Nos. 38 & 41.)

Pursuant to a referral order issued by the Court, Magistrate Judge Marcos E. Lopez filed a Report and Recommendation ("R&R") with regard to defendants' second motion to dismiss on March 23, 2012. (Docket No. 63.) The magistrate judge recommended that

defendants' motion to dismiss be granted as to Mena's ERISA claim
and both Mena's and Perez's Article 1802 claims.  The magistrate
judge also recommended that the Court deny defendants' motions to
dismiss as to Mena's FMLA and Law 80 claims.  (Docket No. 63 at
p. 17.)  On April 3, 2012, the Court adopted the findings of the
R&R in an Opinion and Order.  (Docket No. 68.)

On August 8, 2011, plaintiffs filed a second amended
complaint.  (Docket No. 46.)  Plaintiffs added two discrimination
claims under the ADA:  one alleging employer discrimination
predicated on Mena's ostensible disabilities, and the other
alleging discrimination arising from plaintiff's relationship with
his disabled daughter.[2]  (Docket No. 46 at ¶¶ 57-78.)  Defendants
answered the second amended complaint on August 11, 2011.  (Docket
No. 47.)  On March 23, 2012, before Magistrate Judge Lopez

---

[2] Previously, on May 23, 2011, Mena filed a discrimination
complaint with the Equal Employment Opportunity Commission
("EEOC").  (Docket No. 74-2, pp. 34-39.)  On the complaint form,
Mena indicates that he suffered discrimination based on
"retaliation." Id. at p. 36.  Moreover, the attendant memo states:
"Mena was discriminated against, [the employer] took actions of
retaliation and . . . denied him a reasonable accommodation." Id.
at p. 37.  All of this would appear to presage a discriminatory
retaliation claim.  Nonetheless, plaintiff presents no such claim;
plaintiffs' second amended complaint contains only two
discrimination claims, based on ADA sections 12112(a) and
12112(b)(4), and makes no mention of section 12203, which governs
instances of retaliation.  Although defendants vigilantly address
the phantom retaliation claim in their motion for summary judgment,
(Docket No. 61 pp. 14-16), the Court is under no such obligation.
Dep't. of Recreation & Sports of Puerto Rico v. World Boxing
Ass'n., 942 F.2d 84, 89 (1st Cir. 1991) ("there is no duty on the
part of the trial court . . . to create a claim which [plaintiff]
has not spelled out in his pleading") (quoting Clark v. Nat'l.
Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975)).

submitted his R&R, defendants filed a motion for summary judgment, a statement of undisputed material facts, and a variety of supporting evidence pursuant to Federal Rule of Procedure 56 ("Rule 56"). (Docket No. 61.)  The motion for summary judgment seeks to dismiss all of the allegations made by plaintiffs up to and included in their second amended complaint; because two of these claims have already been dismissed, (Docket No. 68), however, the Court need consider only the ADA claims, along with the FMLA and Law 80 claims that remain pursuant to the Court's original Opinion and Order.

Regarding those claims remaining before the Court, defendants argue (1) that there is no cause of action under the ADA; (2) that there exists no FMLA cause of action because defendants acted within their rights; and (3) that there is no cause of action under Law 80.  (Docket No. 61.)  On April 20, 2012, plaintiffs filed an opposition to defendants' motion for summary judgment, along with a statement of uncontested facts and supporting evidence.  (Docket No. 75.)  Finally, on June 13, 2012, defendants filed a reply to plaintiffs' motion in opposition to defendants' motion to dismiss. (Docket No. 80.)

## I.   UNDISPUTED FACTS

Plaintiffs Mena and Perez are the legally married parents of I.M.P., a teenage girl.  (Docket Nos. 61-1 at ¶ 1; 75-9 at ¶ 1.) Plaintiff Mena worked as a full-time warehouse employee for E.M. T-Shirts from February 1, 1999, until he resigned on August 2, 2010.

(Docket Nos. 61-1 at ¶ 2; 75-1 at ¶ 1.)  E.M. T-Shirts, along with E. Mendoza & Co. Inc., Eduardo Mendoza Corporation, and Calcomanias Garneda, Inc., are clothing distributors and retailers doing business as Supermercado de Camisetas.  (Docket Nos. 46 at ¶¶ 2-5; 47 at ¶¶ 2-5.)  They are owned principally by Eduardo Mendoza-Vidal ("Mendoza-Vidal")  and  Eduardo  Mendoza-Fernandez  ("Mendoza-Fernandez").  (Docket No. 46 at ¶¶ 2-5.)

In 2002 or 2003, plaintiffs' daughter was diagnosed with idiopathic scoliosis.  (Docket Nos. 61-1 at ¶¶ 3-4; 75-9 at ¶ 3.) This particular strain of scoliosis entails an abnormal curvature of the vertebral column, especially a lateral curvature.  (Docket Nos. 61-1 at ¶ 3; 75-9 at ¶ 3.)  Both parties agree that E.M. T-Shirts has long been aware of I.M.P.'s condition.  Indeed, defendant E.M. T-Shirts has never denied plaintiffs' daughter treatment under its medical insurance, and has covered various procedures, including orthopedic evaluations, radiological studies, magnetic-resonance-imaging studies, and yearly preparations of orthopedic casts and jackets.  (Docket Nos. 61-1 at ¶¶ 4-5; 75-9 at ¶ 4.)  In 2010, Mena requested, and defendant granted, leave of absence without pay on June 17, June 24, July 8, and July 14; on each of these dates, plaintiff attended to the medical treatment of his daughter.  (Docket Nos. 61-1 at ¶ 14; 75-9 at ¶ 14; 74-1 at pp. 21-28.)

Despite granting Mena's unpaid leaves of absence, defendant declined to provide Mena with information regarding his rights

under the FMLA.  (Docket No. 75-9 at ¶ 8.)  Because Mena was eligible for FMLA protection as a parent of a disabled child, he was entitled to a total of twelve workweeks of leave during a given twelve-month period.  (Docket No. 63 at p. 5.)  Mena was unaware of this privilege largely because E.M. T-Shirts did not outfit its facilities with any pamphlets, publications or posters about the FMLA.  (Docket Nos. 63 at p. 3; 75-9 at ¶ 8.)

On July 20, 2010, plaintiffs' daughter underwent a complicated surgical procedure requiring posterior spinal fusion (T4-L3) with segmental instrumentation, thoracoplasty, bone-grafting and allo-grafting.  (Docket Nos. 61-1 at ¶ 6; 75-9 at ¶ 6.)  The surgeon, Dr. Luis Pio Sanchez-Caso ("Dr. Sanchez"), certified in writing that the severity of the procedure required Mena to attend to the care of his daughter from July 19, 2010, until August 2, 2010. (Docket Nos. 61-1 at ¶ 7; 75-9 at ¶ 7.)  Mena met with Torres and requested leave from July 19, 2010, to August 2, 2010.  (Docket Nos. 61-1 at ¶ 8; 75-9 at ¶ 8.)  In response to Mena's request, Torres did not inform Mena of the twelve weeks of intermittent leave afforded him by the FMLA.  (Docket Nos. 75-9 at ¶¶ 8, 13 and 17; 75-3 at p. 2.)  Torres also discussed plaintiff's request for leave with Yesenia Gago-Aponte ("Gago"), an employee in E.M. T-Shirt's human resources department, and instructed Gago to make unavailable any materials regarding the FMLA, ADA, or Fair Labor Standards Act.  (Docket No. 75-3 at p. 2.)

On July 15, 2010, Mena submitted a signed request for leave of absence for July 19, 2010, through August 2, 2010. (Docket Nos. 61-1 at ¶ 8; 74-1 at p. 10; 74-2 at p. 2.) The official form, completed by Mena, states the "reason for the request" as "vacation." (Docket No. 74-2 at p. 2.) Furthermore, the form indicates that Mena requested "the payment of 0 days in cash." Id.

Defendant granted Mena's leave of absence and deducted plaintiff's hours from his accrued paid vacation days. (Docket Nos. 61-1 at ¶ 8; 75-9 at ¶ 13.) Between July 19, 2010, and August 2, 2010, Mena had no contact with anyone at E.M. T-Shirts. (Docket Nos. 61-1 at ¶ 16; 74-1 at p. 11.) During the same period of time, Mena spent at least six days working as a security guard with Cuerpo de Seguridad Privada, Inc. ("Cuerpo") (Docket Nos. 61-1 at ¶¶ 10-12; 75-9 at ¶¶ 10-12; 74-1 at pp. 6-8.) Both parties acknowledge that Mena held a second job at Cuerpo during his tenure at E.M. T-Shirts, and that his "moonlighting" as a security guard did not interfere with his day job. (Docket Nos. 61-1 at ¶ 10; 75-9 at ¶ 10.) On several days between July 19, 2010, and August 2, 2010, plaintiff's work schedule at Cuerpo overlapped with the hours he typically spent at E.M. T-Shirts (Docket No. 61-1 at ¶ 12.)

On July 28 or 29, 2010, during her convalescence, plaintiffs' daughter suffered a postoperative complication. (Docket Nos. 61-1 at ¶ 17; 75-9 at ¶ 17.) Mena did not inform anyone at E.M. T-Shirts of this complication until August 2, 2010, nor did he request any additional leave. Id. Rather, on August 2, 2010, Mena

resigned from his position at E.M. T-Shirts. Plaintiff's resignation letter states that he resigned "against [his] will and due to personal problems." (Docket Nos. 61-1 at ¶ 17; 75-6 at p. 2.) Moreover, on the day of his resignation, Mena explained to Torres that he was leaving E.M. T-Shirts because of his daughter's poor health and because he thought he was being forced to resign by the company. (Docket Nos. 61-1 at ¶ 17; 75-9 at ¶ 17.)

## II. SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Under the summary judgment standard, the Court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. The Court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable references, and unsupported speculation." Forestier Fradera v. Municipality of Mayagüez, 440 F.3d 17, 21 (1st Cir. 2006).

Cross-motions for summary judgment do not alter the summary judgment standard, but rather require the trial court to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed.  See Adria Int'l. Group, Inc. v. Ferre Dev. Inc., 241 F.3d 103, 107 (1st Cir. 2001); Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996). In deciding cross-motions for summary judgment, trial courts must consider each motion separately, drawing inferences against each movant in turn.  Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).

## III. DISCUSSION

### A.  The ADA Claims

The purpose of the ADA is to protect qualified persons with disabilities from discrimination in employment.  42 U.S.C. § 12112(a).  Section 12112(a) of the ADA prohibits discrimination in all employment practices, including job application procedures, hiring, firing, advancement, and compensation.  Id.  Moreover, section 12112(b)(4), or the "associate provision" of the ADA, protects employees from discrimination "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."  42 U.S.C. § 12112(b)(4).  Plaintiff brings claims under both sections 12112(a) and (b)(4).  First, in his section 12112(a) claim, plaintiff alleges that "[t]he [d]efendant's refusal to engage in an

interactive process and their discriminatory animus on the basis of [p]laintiff Mena's disability caused him to be constructively discharged from employment." (Docket No. 46 at ¶¶ 67-78.) Second, pursuant to section 12112(b)(4), plaintiff alleges that defendant "discriminated against [p]laintiff Mena on the basis of his association with a disabled person [,his daughter,] by denying him the requested time off from work, pressuring, harassing and threatening him with his job and, constructively discharging him from employment." (Docket No. 46 at ¶¶ 57-66.) The Court considers each claim in turn.

### i.   Section 12112(a)

To establish an unlawful discrimination claim under section 12112(a) of the ADA, a plaintiff must prove by a preponderance of the evidence: (1) that he was disabled within the meaning of the Act; (2) that with or without reasonable accommodation he was qualified to perform the essential functions of the job; and (3) that the employer discharged him because of his disability. Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 646 (1st Cir. 2000); Criado v. IBM Corp., 145 F.3d 437, 441 (1st Cir. 1998). The burden of proof regarding all three prongs falls on the plaintiff. Lessard v. Osram Sylvania, Inc., 175 F.3d 193, 197 (1st Cir. 1999). The Court finds plaintiff fails to meet this burden because he does not demonstrate a disability pursuant to the first prong of the test.

Indeed, the threshold question in any ADA action is often whether the plaintiff can demonstrate a disability. Torres-Alman v. Verizon Wireless Puerto Rico, Inc., 522 F.Supp.2d 367, 382 (D.P.R. 2007) (citing Lessard, 175 F.3d at 197). Pursuant to the ADA, a disability comprises "a physical or mental impairment that substantively limits one or more major life activities." 42 U.S.C. § 12102(1)(A). When considering whether a plaintiff has demonstrated a disability, the First Circuit Court of Appeals applies a tripartite sub-analysis. Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st Cir. 2002) (citing Toyota Motor MFG., Ky., Inc. v. Williams, 534 U.S. 684, 690 (2002); Bragdon v. Abbott, 524 U.S. 624, 631 (1998); Lebron-Torres v. Whitehall Labs., 251 F.3d 236, 239-240 (1st Cir. 2002)). In order to demonstrate a disability, (1) the employee must prove that he suffers from a physical or mental impairment; (2) the Court must evaluate the life activities affected by the impairment to determine whether they constitute "major" life activities;[3] and (3) the Court must ask whether the impairment substantially limits the major life activity. Carrol, 294 F.3d at 238. To be substantially limiting, "[t]he impairment's impact must . . . be permanent or long-term." Toyota Motor, 534 U.S. at 690.

---

[3] For the purposes of ADA analysis, major life activities include, but are not limited to, "caring for onself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Because appraising a personal disability under the ADA is an "individualized inquiry," the Court addresses the particulars of Mena's case. Carrol, 294 F.3d at 238 (citing Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999). To establish an "impairment" under the sub-analysis's first prong, Mena complains that he endured serious anxiety as a result of "the harassment, the threats and the pressure imposed on him by defendants."[4]   (Docket No. 46 at ¶ 30.)   Moreover, Mena alleges that the stress brought about by his daughter's surgery caused him to seek medical care, and that the severity of this stress constituted "a mental impairment that substantially limit[ed] one or more of his major life's activities [sic]." (Docket No. 46 at ¶ 68.)   Notably, Mena fails to provide evidence of any "medical care" he received in light of his daughter's condition; nor does he point to any psychiatric evaluation diagnosing his alleged mental impairment.   Even if, arguendo, Mena's stress constitutes a mental impairment, he fails to establish the third prong of the sub-analysis.

---

[4] Mena points to a few occasions on which he was allegedly threatened by defendants.  He alleges that Wanda Torres, executive assistant to Mendoza-Vidal, repeatedly warned him that he would be fired if he continued to request days off.  (Docket Nos. 61-1 at ¶ 18, 75-9 at ¶ 14.)  Torres also threatened to fire Mena if he did not return to work by August 3, 2010.  (Docket Nos. 75-9 at ¶ 17, 61-1 at ¶ 18.)   Furthermore, Mena points to a few incidents in which Mendoza-Vidal or Mendoza-Fernandez made disparaging or off-color comments regarding Mena's unfortunate home life.  (Docket No. 61 at p. 9.)

Pursuant to the second prong of the sub-analysis, the Court must determine whether the activities affected by the impairment constitute "major" life activities. Carrol, 294 F.3d at 238. Although Mena does not specify which, if any, major life activities had been substantially limited by his stress, he does state throughout his complaint that he felt "compelled to resign from his job" because of the "extraordinary emotional and psychological pressure" he experienced at E.M. T-Shirts. (See Docket No. 46 at ¶¶ 20, 30, 31, 61 & 69.) Therefore, the Court assumes that Mena's stress-impairment inhibited his ability to "work," an enterprise which constitutes a major life activity pursuant to the ADA. 42 U.S.C. § 12102(2)(A).

Nonetheless, Mena fails the third prong of the sub-analysis, which the First Circuit Court of Appeals has found to be dispositive. Carrol, 294 F.3d at 239. Pursuant to the third prong, the Court must ask whether the impairment *substantially limits* the major life activity in question. Carrol, 294 F.3d at 238. Even assuming, arguendo, that Mena's stress does constitute an impairment under prong one, and that the ability to work qualifies as a major life activity under prong two, Mena's alleged impairment does not "substantially limit" the activity of working. Id. As noted above, to be substantially limiting, the impairment's impact must be permanent or long-term. Moreover, when work is at issue, a substantial impairment exists when plaintiff can show that he is "significantly restricted" in his "ability to

perform a class of jobs or a broad range of jobs in various classes." Id. (citing Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C., 258 F.3d 30, 33 (1st Cir. 2001); Gelabert-Ladenheim v. American Airlines, Inc., 252 F.3d 54, 60 (1st Cir. 2001) (internal quotation marks omitted)). To survive summary judgment, plaintiff must produce sufficient evidence that his impairment was "profound enough and of sufficient duration, given the nature of [his] impairment," to significantly restrict him in working. Id. (citing Whitney, at 258 F.3d at 33). Plaintiff fails to make this showing. Mena submits absolutely no evidence demonstrating that he was unable to perform his job as a warehouse employee for E.M. T-Shirts. To the contrary, he avers in a verified statement to the Court that he was a "reliable and stable employee." (Docket No. 75-2 at ¶ 3.) Having failed to demonstrate a disability under section 12102(1)(A) of the ADA, plaintiff cannot mount a convincing 12112(a) discrimination claim.[5] Therefore, the Court **GRANTS** defendants' motion for summary judgment regarding plaintiffs' section 12112(a) claim.

_____

[5] Mena makes only the faintest attempt at a reasonable-accommodation claim under section 12112(a). He argues that defendants' alleged refusal to engage in "a meaningful dialogue" concerning his request to take time off and "rehabilitate from his medical condition" constituted a "failure to accommodate" his disability. (Docket No. 46 at ¶¶ 69-74.) No matter how convincing or unconvincing Mena's argument might be, it need not be considered by the Court because Mena has failed to produce sufficient evidence showing that his anxiety rendered him disabled under the ADA. Therefore, without a showing of disability, Mena's reasonable-accommodation claims must likewise fail. See Torres, 522 F.Supp.2d at 385.

### ii.  Section 12112(b)(4)

Mena also brings a claim under section 12112(b)(4), the "association provision" of the ADA.  Section 12112(b)(4) protects employees from discrimination "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).  Mena claims that defendants knew of his daughter's precarious medical condition and "discriminated against [him] on the basis of his association with a disabled person by denying him the requested time off from work . . ."  (Docket No. 46 at ¶ 62.)  But plaintiff's argument – in short, that defendant should have accommodated his need to care for his daughter – seeks to extend the scope of section 12112(b)(4) beyond its intended meaning.  We join several district and circuit courts in finding that the ADA does not require an employer to make any reasonable accommodation to an employee caring for a disabled relative.  See Larimer v. Int'l. Business Machines Corp., 370 F.3d 698, 700 (7th Cir. 2004); Den Hartog v. Wasatch Acad., 129 F.3d 1076, 1085 (10th Cir. 1997); Tyndall v. Nat'l. Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 214 (4th Cir. 1994); Torres-Alman, 522 F.Supp.2d at 382. Therefore, Mena is not entitled to bring a claim against defendant under section 12112(b)(4) of the ADA.  The Court offers the following reasons for its findings.

First, a thorough reading of section 12112 suggests that the ADA does not require an employer to make any accommodation to an employee caring for a disabled relative or associate. Section 12112(b)(4) itself protects employees from discrimination "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). Plaintiff might have found refuge in section 12112(b)(4) had he claimed that E.M. T-Shirts denied him job duties, promotions, or benefits on account of his relationship with his daughter. But he will find no quarter here when seeking special accommodation. This is because section 12112(b)(4) guarantees only that an employee with a disabled relative be treated no differently than any other employee; it does nothing to confer extra benefits or allowances to an employee simply because he associates with a disabled person.

Second, an examination of section 12112 demonstrates that special accommodation is given only to disabled employees, and not to disabled relatives or associates of employees. For example, the plain terms of section 12112(b)(5)(A) require an employer to make "accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability *who is an applicant or employee* . . ." (emphasis added.) Moreover, section 12112(b)(5)(B) forbids "denying employment opportunities to *a job applicant or employee* . . . if such denial is based on the need of

[the employer] to make reasonable accommodation to the physical or mental impairments of the *employee or applicant.*" (emphasis added.) Similarly, section 12112(b)(4) makes no mention of accommodating the disabled relative or associate of an employee on the grounds of their association. Upon a thorough reading, then, it is clear that the statutory language of section 12112 requires only that employers provide reasonable accommodation for their disabled employees. Because plaintiff Mena himself is not disabled, defendant is under no obligation to offer any reasonable accommodation.

Third, the legislative history of section 12112(b)(4) makes clear that the provision was intended, at least in part, to protect a qualified employee from adverse employment actions based on "unfounded stereotypes and assumptions" arising from the employee's relationship with a disabled person. Oliveras-Sifre v. Puerto Rico Dep't. of Health, 214 F.3d 23, 26 (1st Cir. 2000). For instance, the provision was properly invoked in Sifre v. Dep't. of Health, 38 F.Supp.2d 91 (D.P.R. 1999), where employees of the Department of Health alleged that they suffered employer discrimination because of their association with people diagnosed with HIV and AIDs. The employees argued that it was the stigma attached to the HIV and AIDs patients that lead to the discrimination. One significant purpose of section 12112(b)(4), then, is to ensure that employees who associate with disabled persons are not subject to the cruel judgment or unfounded biases

of their employers.   At no point does plaintiff claim that defendant treated him unfairly simply because he was the parent of a disabled child; therefore, this provision does not apply to him.

Finally, other courts which have interpreted the scope of the "association provision" have also found that it does not require an employer to accommodate an employee who is taking care of a disabled person.   In Larimer, the Seventh Circuit Court of Appeals held that the right to accommodation is "limited to disabled employees," and "does not extend to [an] associate" of the employee.   370 F.3d at 700.   Moreover, the Fourth Circuit Court of Appeals held in Tyndall that "[t]he ADA does not require an employer to restructure an employee's work schedule to enable the employee to care for a relative with a disability."   31 F.3d at 214.   Indeed, Magistrate Judge Lopez recently held that the "ADA does not require an employer to provide reasonable accommodation to a non-disabled employee in order for said employee to take care of a disabled associate."   Torres-Alman, 522 F.Supp.2d at 387.   For these reasons, the Court **GRANTS** defendant's motion for summary judgment regarding plaintiffs' section 12112(b)(4) claim.

   **B.   The FMLA Claim**

The FMLA contains two distinct types of provisions: those establishing substantive rights for employees and those providing protection for those rights.   Colburn v. Parker Hannifin Corp., 429 F.3d 325, 330 (1st Cir. 2005).   The first, codified at 29 U.S.C. § 2612, awards eligible employees "a total of 12

workweeks of leave during any 12-month period," which may be taken
intermittently in order to care for a child with a "serious health
condition."  29 U.S.C. § 2612(a)(1)(C).  Upon concluding a period
of leave under the FMLA, an employee is entitled to return to the
same position, with equivalent pay, benefits, and working
conditions, and without loss of accrued seniority.  Hodgens v. Gen.
Dynamics Corp., 144 F.3d 151, 159-160 (1st Cir. 1998).  Pursuant to
section 2612(d)(2)(A), however, an eligible employee may elect, or
an employer may require the employee, to substitute any of the
accrued paid vacation leave, personal leave, or family leave of the
employee for any of the twelve-week leave provided under the FMLA.
29 U.S.C. 2612(d)(2)(A).

        The second type of provision prohibits employers from
interfering with the substantive rights conferred by the FMLA.  29
U.S.C. § 2615.  To begin with, section 2619(a) sets forth a notice
provision requiring an employer prominently to post notices
containing excerpts or summaries of pertinent FMLA employee
information.  29 U.S.C. § 2619.  Moreover, an employer may not
restrain or deny an employee exercising his right to take FMLA
leave.  29 U.S.C. § 2615(a).  If such a situation arises, an
employee may bring a civil action seeking compensatory damages,
including wages, salary, and benefits.  Colburn, 429 F.3d at 331.

        The question before the Court is whether defendants
interfered with the exercise of plaintiff's right to take leave
under the FMLA.  Even though Magistrate Judge Lopez found that

plaintiff pled sufficient information to survive a motion to dismiss, (Docket No. 61 at p. 12), at the summary judgment level plaintiff must show there to be a genuine dispute concerning material facts.   Fed.R.Civ.P. 56(a).   Upon considering the testimony and evidence provided by both parties, the Court finds that there is indeed genuine dispute of material facts with regard to plaintiff's FMLA claim.

First, plaintiff alleges that defendant failed to provide notice of pertinent FMLA information pursuant to section 2619(a). As a result, plaintiff did not understand his rights under the FMLA when he requested leave between July 19, 2010, and August 2, 2010. (Docket No. 75-9 at ¶ 8.)   E.M. T-Shirts employee Gago has stated that Torres instructed her not to talk to other employees about their rights under the FMLA, and not to publish any manuals or notices regarding the Act.   (Docket No. 75-3 at p. 2.)   While defendants do not dispute these allegations, plaintiff himself casts doubt on the veracity of his claim when he states in his deposition that he explicitly "asked for the FMLA [leave], which was without pay."   (Docket No. 74-1 at p. 10.)   Whether plaintiff actually stated his request in those terms, or merely recast his original language for the sake of clarity, is unclear.

Second, plaintiff alleges that, independent of his knowledge of his FMLA rights, he requested leave without pay, in order to reserve his paid vacation days for the Christmas holiday. Plaintiff further alleges that Torres forced him to use his

vacation days against his will (Docket No. 75-9 at ¶ 9).
Defendants, on the other hand, allege that plaintiff requested his
leave be deducted from his accrued vacation days, and that this
request was granted. (Docket No. 61-1 at ¶ 9.) As an alternative
defense, defendants point out in their motion for summary judgment
that under section 2612(d)(2)(A), an eligible employee may elect,
or an *employer may require* the employee, to substitute any of the
accrued paid vacation leave, personal leave, or family leave of the
employee for any of the twelve-week leave provided under the FMLA.
(Docket No. 61 at p. 13.) (emphasis added.) Defendants reason that
plaintiff lacks a cause of action because defendants were merely
exercising their statutory right under section 2612 by requiring
Mena to take a paid vacation.[6]  Id. at p. 14.  But this defense
does nothing to address the possibility that defendants' alleged
failure to comply with the notice requirements of 29 U.S.C. § 2619,
and Torres's insistence that Mena take a paid vacation might have
burdened plaintiff's exercise of his basic FMLA rights in violation
of 29 U.S.C. § 2615.  See Ragsdale v. Wolverine World Wide Web,
Inc., 535 U.S. 81 (2002).  Had plaintiff been able to exercise
these rights, he still might have accepted a paid vacation, but
chosen to extend his leave via the FMLA. Moreover, the possibility

---

[6] Defendants' additional argument that plaintiff abused his
FMLA leave by moonlighting as a security guard, and that fraudulent
use of FMLA rights justifies adverse employment action, is
inapplicable here because it is clear that plaintiff was not on
FMLA leave between July 19, 2010, and August 2, 2010. (See Docket
No. 61 at p. 18.)

that defendants misled Mena into forgoing rights guaranteed under the FMLA is enough to warrant further judicial consideration.

Given the contradictory nature of the testimony offered by the parties, the Court finds that there are genuine issues of material fact that require credibility determinations regarding defendants' interference with Mena's rights under the FMLA. These determinations render summary judgment improper on plaintiff's FMLA claim. See Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("[a]t the summary judgment stage . . . the court should not engage in credibility assessments"). Therefore, the Court **DENIES** defendant's motion for summary judgment regarding plaintiff's FMLA claim.

### C.    The Law 80 Claim

Plaintiff seeks indemnification for wrongful discharge under Law 80. P.R. Laws Ann. tit. 29 § 185. In his R&R, the magistrate judge found that plaintiff's Law 80 claim was not preempted by his ERISA claim, and therefore that the former claim survived defendants' motion to dismiss. (Docket No. 63 at pp. 14-15.) Nonetheless, because plaintiff was not actually fired from his job, any compensation he may be entitled to under Law 80 is predicated on showing constructive discharge. The Court finds that, at the summary judgment level, plaintiff fails to make a showing that he was constructively discharged.

"Constructive discharge" is a label for on-the-job treatment so hostile or degrading that no reasonable employee would

tolerate continuing in the position.  Melendez-Arroyo v. Cutler-Hammer de P.R. Co., Inc., 273 F.3d 30, 36 (1st Cir. 2001) (citing Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23, 26 (1st Cir. 1997).  The Court applies an objective standard:  the conditions must be so difficult or unpleasant that a reasonable person in the plaintiff's shoes would have felt compelled to resign.  Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 28 (1st Cir. 2002). Properly applied, this standard "does not guarantee a workplace free of the usual ebb and flow of power relations and inter-office politics." Suarez v. Pueblo Intern., Inc., 229 F.3d 49 (1st Cir. 2000).  Rather, the plaintiff must establish that "working conditions were so unpleasant that staying on the job while seeking redress would have been intolerable." Marrero, 304 F.3d at 28 (quoting Keeler v. Putnam Fid. Trust Co., 238 F.3d 5, 10 (1st Cir. 2001)).

       The few facts on which the claim of constructive discharge rests are disputed: first, that Torres warned Mena on several occasions that he would be fired if he took any more days off, (Docket Nos. 61-1 at ¶ 18; 75-9 at ¶¶ 14 & 17; 61-1 at ¶ 18), and, later, that Mendoza-Vidal reacted flippantly when Mena approached him about his daughter's illness.[7]  (Docket 21 at ¶ 26;

---

[7] While defendants do not explicitly refute these facts, they do not accept them either.  Even if admitted as evidence, however, the vituperation of an executive assistant and an isolated disparaging remark by an employer are insufficient to establish a constructive-discharge claim.

61 at p. 9.)  Outside of these sparse instances of animus, however, Mena's constructive-discharge claim appears predicated on amorphous "threats" and "harassment" perpetrated by defendants.  (Docket No. 46 at ¶ 30.)  For instance, Mena argues that when "[p]laced under . . . an extraordinary emotional and psychological pressure by defendants, [he] was compelled to resign from his job . . . ." Id. at ¶ 31.  The only event that could possibly give rise to this psychological pressure is the alleged dispute over plaintiff's leave of absence, when defendants insisted that he use his paid vacation days against his will.  The facts surrounding this dispute, however, do not convey such an unpleasant picture.  Mena was indeed granted a vacation, even if it was not exactly to his liking.  (As noted, he was never denied a day off.)  Moreover, he had no quarrelsome contact with defendants in the days leading up to his resignation.  Finally, he resigned from his job without so much as seeking to extend his leave of absence, and, therefore, without knowing that his request would have been denied.[8]  (Docket No. 61-1 at ¶ 17, 75-9 at ¶ 17).  Even if Mena believed that he was being forced to resign, or that his discharge was inevitable, this in itself would not be enough to show constructive discharge.  The

---

[8] There is some debate as to whether (1) Torres read or filed Dr. Sanchez's certified letter concerning I.M.P's surgery, and (2) whether Torres paid attention to Mena when he sought to explain the matter of his daughter's postoperative complication.  While Torres's alleged conduct might be considered rude or unsympathetic, it cannot be construed as harassment, nor does it prove that Mena had no choice but to resign from his job.  (Docket No. 75-9 at ¶¶ 7 & 17.)

standard "cannot be triggered solely by an employee's subjective beliefs, no matter how sincerely held."  <u>Suarez</u>, 229 F.3d at 54. For these reasons, the Court **GRANTS** defendant's motion for summary judgment regarding plaintiff's Law 80 claim.

IV.  **CONCLUSION**

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** defendants' motion for summary judgment.  The disputed issues concerning plaintiffs' FMLA claims are remitted for trial.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 26, 2012.

<u>s/ FRANCISCO A. BESOSA</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE